```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                  FORT WORTH DIVISION

KYLEE PETERSON                    §
                                  §
VS.                               §   CIVIL ACTION NO. 4:11-CV-404-Y
                                  §
WELLS FARGO BANK, N.A., et al.    §
```

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, DENYING MOTIONS TO STRIKE, & DENYING MOTION TO DISQUALIFY EXPERT

Before the Court is the motion for summary judgment (doc. 83) of defendants Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage (collectively, "Wells Fargo"). Wells Fargo also seeks to strike certain exhibits included in plaintiff's summary-judgment evidence (doc. 116). After consideration of the motions, responses, and replies, the Court GRANTS the motion for summary judgment and DENIES the motion to strike. Given the Court's resolution of Wells Fargo's motion for summary judgment, Plaintiff's pending motion to disqualify Wells Fargo's expert witness (doc. 75) is DENIED as moot. For the same reason, Wells Fargo's motion to strike a portion of the appendix in support of Plaintiff's motion to disqualify (doc. 95) and its motion to strike Plaintiff's expert witnesses (doc. 126) are also DENIED as moot.

### I.   BACKGROUND

In 2002, plaintiff Kylee Peterson obtained a mortgage loan from Wells Fargo in the amount of $145,713. The terms of the loan provided for an interest rate of 6% and monthly principal and interest payments of $1,043.93. As of April 30, 2007, Peterson was in default on her payment obligations under the loan. Consequently, in May 2007,

Peterson entered into a loan-modification agreement with Wells Fargo. Under the agreement, Peterson's interest rate remained 6%, but the unpaid principal balance of $128,871.96 was increased to $135,872.12.

By October 2007, Peterson had defaulted on her payment obligations under the loan modification. Wells Fargo sent Peterson another loan-modification agreement on September 2, 2008. Under the agreement, Peterson's interest rate would remain 6%, but the unpaid principal balance of $131,901.24 would be increased $143,524.00. Peterson was required to return the signed loan-modification offer within five days of the September 2, 2008 transmittal letter. According to Wells Fargo, it did not receive the signed offer from Peterson until September 29, 2008, which was beyond the five-day deadline. Consequently, Wells Fargo contends that the 2008 loan modification never went into effect, meaning that the principal balance of the loan of $131,901.24 remained unchanged.

Because the 2008 loan modification never took effect, Peterson was still in default under the 2007 loan modification. Accordingly, Wells Fargo sent a notification to Peterson on October 12, 2008, that the loan was in default and to bring the loan current, Peterson would have to pay $16,955.19 within thirty days. Wells Fargo also sent Peterson a special-forbearance agreement on October 17, 1008. The terms of the special forbearance called for Peterson to make three payments of $1,777.91 and a balloon payment of $17,359.15. However, if Peterson was approved for a loan modification, the final balloon

2

payment would be added back to the outstanding loan balance.

Peterson made the three initial payments under the special forbearance. She also entered into another loan-modification agreement on January 20, 2009. Accordingly, the balloon payment was added to the current unpaid principal balance of $131,440.61, for a new balance of $145,093.03.

On July 23, 2010, Peterson called Wells Fargo and asked to be sent the documents related to the 2009 loan modification. A Wells Fargo representative faxed Peterson executed copies of the loan modification agreement and a Truth in Lending Act ("TILA") disclosure form. According to Peterson, the TILA disclosure contained a forged signature. In fact, she contends that she had never even seen the TILA disclosure before July 23.

On June 14, 2011, Peterson filed suit against Wells Fargo, asserting various claims based on the alleged forgery of the TILA disclosure. Wells Fargo moved for dismissal. This Court denied Wells Fargo's motion to dismiss, but required Peterson to plead a more definite statement (doc. 24).

Peterson amended her complaint twice. In her second amended complaint, Peterson alleged that a Wells Fargo employee forged her signature on the previously mentioned TILA disclosure. Peterson also added claims for other alleged forgeries revealed during discovery. In particular, Peterson claims that a Wells Fargo employee forged an October 20, 2008 special-forbearance agreement and a September

3

5, 2008 loan-modification agreement. Based on these allegations, Peterson asserted claims against Wells Fargo for forgery, negligence, and fraud. Wells Fargo moved to dismiss Peterson's amended complaint for failure to state a claim, which this Court denied (doc. 64).

Wells Fargo filed a motion for summary judgment. In its motion, Wells Fargo contends that Peterson has failed to establish that the alleged forgeries injured her. Wells Fargo also filed a motion to strike the appendix Peterson filed in support of her response to Wells Fargo's motion, claiming that it contains numerous objectionable exhibits.

## II.  LEGAL STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed.R.Civ.P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citations omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact is, or cannot be, genuinely in dispute, a party must either (1) cite particular parts of materials on the record (e.g., depositions, documents, and affidavits), (2) show that the materials cited by the adverse party do not establish the presence or absence of a genuine dispute, or (3) show that the

4

adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).  Although the Court "need consider only the cited materials, . . . it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).

In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation and internal quotation marks omitted). "[I]f no reasonable juror could find for the non-movant," summary judgment should be granted. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citations omitted).

## III. DISCUSSION

Wells Fargo contends that Peterson has failed to show injury resulting from the alleged forgeries and that such failure is fatal to each cause of action Peterson asserts. Peterson's claimed damages consist of: (1) damages to her credit resulting from Wells Fargo's submission of negative payment history to credit agencies regarding a loan she contends was void due to the forgeries, (2) damages relating to an alleged unauthorized increase of the principal balance of her loan following modification, and (3) damages for mental anguish suffered as a result of the alleged forgeries.

Peterson's claim of credit injury is based on her contention that the alleged forgeries of certain documents related to her loan

5

modification rendered the original loan void. Therefore, according to Peterson, Wells Fargo damaged her credit by submitting negative payment reports on a void loan.

Contrary to Peterson's contention, the alleged forgeries of the TILA disclosure, the 2008 loan-modification agreement, and the special forbearance would not render her original loan with Wells Fargo void. Instead, as Wells Fargo points out, the loan simply reverts back to the last valid agreement not touched by the forgery. *See Dennis v. Galbreth*, 228 S.W.2d 579, 581 (Tex. Civ. App.—1950) (stating that "the well settled rule is . . . that fraud . . . annuls all contracts infected with it, and when found to exist, relates back to the inception of the contracts to which it pertains"); see also *Int'l Life Ins. Co. v. Herbert*, 334 S.W.2d 525, 529 (Tex. Civ. App.—Waco 1960, writ ref'd n.r.e) (explaining that "[f]raud vitiates every transaction tainted by it; it annuls every transaction which is infected by it). Peterson has not alleged fraud, forgery, or the like with respect to the origination of her loan with Wells Fargo or with respect to the 2007 loan modification. Thus, Peterson's claim that Wells Fargo damaged her credit reputation by reporting on a void loan is without merit.

Peterson also claims that she was injured by the unauthorized increase in the balance of her loan. Peterson's claimed injury originates from the allegedly forged TILA disclosure, which Peterson claims was never provided to her. Peterson contends that she would

6

never have entered into the 2009 loan-modification agreement if she had known that the principal balance of her loan would be increased from $131,440.61 to $145,093.03. However, as Wells Fargo points out, the increase in the principal balance was disclosed to Peterson in the loan-modification agreement. Defs.' App. 71. Peterson does not dispute the authenticity of her signature on that agreement and she admitted in her deposition that she agreed to its terms. Defs.' App. 134-35. Because Peterson was aware that the 2009 loan modification would increase the principal balance of her loan, she has failed to demonstrate how Wells Fargo's alleged forgery of the TILA disclosure damaged her.

Finally, Peterson claims that upon learning of the alleged forgery of the TILA disclosure, she suffered a "mental breakdown" and was rushed to the hospital with symptoms consistent with a heart attack or a stroke. Peterson's medical records reveal a visit to the emergency room on June 24, 2010, where she was diagnosed with mild dehydration and dizziness. Defs.' App. 169. However, Peterson claims that she did not discover the alleged TILA forgery until July 23, 2010, nearly one month *after* her visit to the emergency room. Peterson cannot recover damages for mental anguish where the alleged injuries occurred *before* she discovered the alleged forgery of the TILA disclosure.

In response, Peterson argues that the discovery of the alleged forgery of the TILA disclosure exacerbated her *existing* mental anguish,

7

which she claims was caused by the manner in which Wells Fargo handled her account. However, as Wells Fargo points out, Peterson has never plead that the discovery of the allegedly forged document exacerbated her existing mental anguish. Instead, her amended complaint states: "Once [Peterson] discovered [the] forgery [of the TILA disclosure], [she] started feeling pains in her arms and chest, [she] felt like she was having a heart attack or stroke." Pl.'s 2d Am. Compl. P. 6. A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court. *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990).

Peterson also claims that the stress and anxiety she suffered over the alleged forgery of the TILA disclosure caused her to grind her teeth, resulting in nine cracked teeth. In support of this allegation, Peterson attaches a letter from her dentist, explaining that Peterson had presented with "worn and sensitive teeth" and that she displayed obvious signs of teeth grinding. Pl.'s 2d Am. Compl. P. Ex. E. Although Peterson's dentist states in the letter that teeth grinding is "most commonly related to stress and anxiety," she does not conclude or even speculate that Peterson's teeth grinding is related to Wells Fargo's alleged conduct. *Id.*

Peterson has failed to show that Wells Fargo's alleged forgeries caused her mental anguish. Peterson's alleged mental breakdown and visit to the emergency room pre-dated the discovery of the alleged

8

TILA forgery. Further, Peterson has failed to produce any evidence that her teeth grinding was caused by Wells Fargo's conduct. Even if she had, Peterson's condition and the related damage to her teeth would not entitle her to damages for mental anguish under Texas law Under Texas law, damages for mental anguish are generally not recoverable in negligence cases unless the plaintiff also suffered a serious bodily injury. *City of Tyler v. Likes*, 962 S.W.2d 489, 495-96 (Tex. 1997). The damage to Peterson's teeth from her teeth grinding—which is the only bodily injury alleged to have occurred *after* she discovered the alleged TILA forgery—does not constitute a serious bodily injury.[1] *See Dekelaita v. BP Amoco Chem. Co.*, No. G-07-0131, 2008 WL 2964376, *14 (S.D. Tex. July 30, 2008) (applying Texas law and concluding that plaintiff's TMJ and sleeplessness were "not so severe as to rise to the level of 'serious' bodily injury necessary for mental-anguish damages for negligence"); *see also Hous. Elec. Co. v. Dorsett*, 194 S.W.2d 546, 546, 548 (Tex. 1946) (affirming award of damages for mental anguish to plaintiff who suffered from "extreme nervousness, severe headaches, lapse of memory, and brain deterioration" after she was almost hit by a bus).

## IV. CONCLUSION

Because Peterson has not shown recoverable damages necessary

---

[1] Peterson has not alleged any damages for mental anguish related to the discovery of the other allegedly forged documents—the 2008 special forbearance and the 2008 loan-modification agreement.

9

to support her claims of forgery, fraud, or negligence, the Court concludes that Wells Fargo's motion for summary judgment should be and hereby is GRANTED. Furthermore, because Peterson's objectionable summary-judgment evidence, even if considered, would not affect the outcome of the Court's ruling on the motion for summary judgment, Wells Fargo's objections are OVERRULED and its motion to strike is DENIED. Finally, Peterson has filed a motion to disqualify Wells Fargo's handwriting expert, Linda James. James's testimony related to the authenticity of Peterson's signatures on the loan documents at issue in this lawsuit. The Court has not considered James's testimony in deciding Wells Fargo's motion and, therefore, Peterson's motion to disqualify James is DENIED as moot. Wells Fargo's motion to strike portions of the Peterson's appendix in support of her motion to disqualify James is also DENIED as moot. Finally, Wells Fargo's motion to strike Peterson's designated expert witnesses is DENIED as moot.

SIGNED November 25, 2013.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

10